## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| PURE FISHING, INC., an Iowa Corporation, | ) | C.A. No. 3:10-cv-2140-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | BARRING WITNESS |
| | ) | |
| NORMARK CORPORATION, a Minnesota | ) | |
| Corporation, d/b/a RAPALA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Defendant's request to bar an expert witness belatedly offered by Plaintiff. Plaintiff identified this witness on November 4, 2011, as an expert to testify as to "the molecular weight characterization of polymers" in a claim construction hearing scheduled for November 9, 2011. Dkt. No. 86. However, the deadline for identifying witnesses to give testimony relevant to claim construction expired in July 2011.[1]

To name a witness so far beyond the deadline set by scheduling order would require a strong justification. As no justification is offered or apparent, the court grants Defendant's request.[2]

**Absence of Surprise as to Expert Testimony.** The issue of how molecular weight of a polymer should be measured was clearly identified as an issue for claim construction in the parties' joint claim construction statement. *See* Dkt. No. 69-1 at 3-7 (disclosing differing constructions and

---

[1] This deadline was extended several times. See Dkt. No. 33 (setting deadline for witness and related disclosures as July 1, 2011); Dkt. No. 53 (extending deadline to July 8, 2011); Dkt. No. 63 (extending related deadline to July 13, 2011); Dkt. No. 65 (extending related deadline to July 29, 2011).

[2] Defendant's request to bar the witness was first raised by email. The court initially set a teleconference for Monday, November 7, 2011, to hear the dispute. After reading the filed submission in which Plaintiff indicated its intent to call this witness, the court determined that no hearing was necessary. The court so informed the parties on November 4, 2011.

supporting evidence on which each party intended to rely). This joint filing in late July 2011 reflects the parties' prior exchange of positions and attempts to reach agreement. Thus, it establishes that Plaintiff had notice of differences as to how the molecular weight of a polymer was measured well before July 29, 2011. Plaintiff does not, in fact, suggest otherwise.

Defendant timely disclosed an intent to rely on expert testimony as to this point. *Id.* at 7 (disclosing Defendant's intent to rely on Professor Ronald A. Siegel). Plaintiff did not.

Indeed, Plaintiff acknowledged both its understanding that Defendant intended to rely on expert testimony and its own failure to name an expert witness in its opening claim construction memorandum:

> Pure Fishing believes that Normark intends to rely on an expert declaration as extrinsic evidence for their preferred construction. Pure Fishing does not believe that sort of evidence is necessary here, but if the Court sees fit to allow it, Pure Fishing requests that it be allowed to: 1) submit its own expert report and 2) depose Normark's expert prior to the *Markman* hearing.

Dkt. No. 74 at 22 (filed 8/31/2011). Plaintiff did not, however, move for relief from the earlier expert-witness deadline. Neither did Plaintiff mention an expert in its responsive memorandum. Dkt. No. 79 (filed 9/28/2011).

Defendant, in contrast, relied extensively on Professor Siegel in its opening memorandum and included the following argument in its responsive memorandum:

> Pure Fishing requests that it be allowed to submit its own expert report on this issue. Dkt. 74, p. 18. That request is untimely, as disclosure of expert reports were due on July 13 under the modified scheduling order. See Dkt. 33, 53, and 63. Pure Fishing also asks that it be allowed to depose Professor Siegel. Dkt. 74, p. 18. Normark notes that the scheduling order already permits such a deposition, see Dkt. 33, item 2(f), though Pure Fishing has not sought to schedule one. Normark also notes that it anticipates providing Professor Siegel's testimony by Declaration, unless the Court has particular questions it wishes him to address or prefers that he appear live.

Dkt. No. 80 at 2 (n.1) (filed 9/28/2011).

2

Thus, there is and was no surprise in the fact that Defendant intends to rely on an expert as to the particular subject matter. Neither is there any surprise that Defendant would oppose any attempt by Plaintiff to name an expert after the relevant deadline.[3]

**Change in Defendant's Position.** The court will assume without deciding that the position Defendant now espouses is somewhat different from the position suggested in the Joint Claim Construction Statement (at least as understood by Plaintiff). Specifically, Defendant has disavowed any intent to rely on the average molecular weight and degree of polymerization of *all polymers* in a lure. Even if this is a change, it is a change which disavows a position Plaintiff argued was incorrect. Thus, if it is a surprise, it should be a welcome one.[4] In any event, there is no suggestion that the defense expert's testimony has changed as that testimony relates to *how* the molecular weight of polymers is measured (not *which* polymers are measured). Thus, there is no shift in the defense position which justifies naming a belated expert.

**Change in Plaintiff's Position.** Plaintiff's proposed construction of the relevant term as set forth in both the July 29, 2011 Joint Claim Construction Statement and Plaintiff's opening memorandum suggests a theory that the claim limitation at issue is satisfied if even one molecule of a polymer component meets the molecular weight and degree of polymerization minimums ("one-

---

[3] In its opening memorandum, quoted above, Plaintiff suggests a belief that it may ignore a deadline for naming an expert witness if it believes such testimony is unnecessary, then revive its right to name an expert if the court accepts testimony from an expert offered by the opposing party. Such an interpretation of a scheduling order is nonsensical.

[4] Defendant has disavowed the position Plaintiff attributes to it: that the molecular weight to be considered would be the average of all polymer components used in a lure (assuming more than one such component) ("all-polymers theory"). Despite Defendant's repeated disavowals of this position, Plaintiff continues to argue against it. Thus, it is not even clear that Plaintiff understands this possible change in position by Defendant.

molecule theory"). *See* Dkt. No. 69-1 at 5; Dkt. No. 74 at 14. Plaintiff appeared to disavow this position in its responsive brief.

This led the court to seek clarification by email whether the parties had, in fact, now reached agreement as to their position. In responding to the court's inquiries, Plaintiff retracted its prior disavowal of the one-molecule theory. While this may signal a significant change in Plaintiff's position (albeit a change back to Plaintiff's apparent starting point), it is hardly a change wrought by another party such as might justify the late naming of an expert.

**Absence of Leave to Name Late Witnesses.** It was not until November 4, 2011, virtually on the eve of the claim construction hearing, that Plaintiff gave notice that it intended to offer an expert witness. This notice came in response to a docket text order entered November 3, 2011, in which the court directed the parties to file responses by November 4, 2011, "(1) advising whether the party intends to present witnesses; (2) disclosing the name of the witness and subject matter of the intended testimony, and (3*) confirming that the witness has been properly and timely disclosed as it relates to the subject matter of the intended testimony*." Dkt. No. 84 (emphasis added).[5]

Plaintiff responded to these inquiries by indicating it intended to present testimony from Michael Rubinstein, Ph.D., on the subject mater of the "molecular weight characterization of

---

[5] The witness-related inquiry was prompted by several factors. First, because a hearing with witnesses generally takes longer, the court desired to know, for its own planning purposes, whether witnesses would be presented. Second, the court sought to clarify that the parties should reach their own decision whether to offer live testimony. Third, although it appeared Plaintiff had not timely identified an expert on the relevant claim construction issue, the court wanted to confirm that this was correct and also to determine whether there were any non-expert witnesses Plaintiff might offer.

polymers." Dkt. No. 86 at 1. As to timeliness of the disclosure of this witness and subject matter, Plaintiff stated:

> Pure Fishing confirms that Dr. Rubinstein has been properly and timely disclosed to Defendant Normark following the Court's inquiry on the subject matter. Dr. Rubinstein was disclosed and an expert report by him is being served on Normark today. Dr. Rubinstein will also be made available for deposition before the Court's hearing.

*Id.* at 2. Plaintiff offered no other justification for the belated naming of the witness, suggesting a it was relying on whatever leave to name a late expert might be implicit in the court's request that the parties provide information relating to any witnesses they intended to present at the hearing.

The deadline for disclosing claim construction witnesses expired in July 2011. Plaintiff makes no suggestion that Dr. Rubenstein was disclosed by this deadline. Instead, its statement that the witness was "timely disclosed" *in response to the court's inquiry* (referring to the docket text order relating to witness presentation) and that Plaintiff was then *serving* a report on Defendant confirm that the witness had just been identified and his report was, at best, in transit to Defendant.

This suggestion of timeliness turns the court's inquiry on its head. In addition to directing the parties to advise of witnesses to be presented, the court directed the parties to "confirm[] that the witness has been properly and timely disclosed as it relates to the subject matter of the intended testimony." This third part of the inquiry can only be read to reaffirm, rather than waive, prior deadlines. To read it otherwise is unreasonable.

## CONCLUSION

In summary, Plaintiff has offered and the court can find no justification for allowing Plaintiff to name an expert witness on claim construction long after the deadline for doing so has passed and

virtually on the eve of the claim construction hearing.  Defendant's request to bar Plaintiff from

offering Dr. Rubenstein as a claim construction witness is, therefore, granted.

     IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
November 7, 2011