**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| PURE FISHING, INC., an Iowa Corporation, ) | C.A. No. 10-cv-2140-CMC |
| ) | |
| Plaintiff, ) | SUPPLEMENTAL |
| ) | OPINION AND ORDER |
| v. ) | ON ATTORNEY FEES |
| ) | |
| NORMARK CORPORATION, a Minnesota ) | |
| Corporation, d/b/a RAPALA, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on remand from the United States Court of Appeals for the Federal Circuit for reconsideration of certain aspects of this court's January 21, 2014 order granting a partial award of attorneys' fees to Defendant Normark Corporation ("Normark"). *See* ECF No. 392 (Federal Circuit's remand order); ECF No. 375 ("Opinion and Order [on] Attorney Fees and Sanctions Motions" entered January 21, 2014). Specifically, the Federal Circuit remanded to allow this court "to reconsider its order on attorneys' fees under 35 U.S.C. § 285 in light of the United States Supreme Court's recent decisions in *Highmark Inc. v. Allcare Health Management Systems, Inc.,* 134 S. Ct. 1744 (2014) and *Octane Fitness, LLC, v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014)." ECF No. 392.

Having fully considered Normark's post-remand motion and the parties' related memoranda in light of the change in the applicable standard, the court modifies its prior order to award Normark an additional $ 283,127.09 in fees and expenses for defense of the claim relating to U.S. Patent No. 6,174,525 ("Kelley Patent"). The court declines to award additional fees for defense of claims (or

pursuit of counterclaims) relating to U.S. Patent No. 5,749,214 ("Cook Patent"). The court also declines to award fees for pursuit of the present motion.[1]

## MODIFIED STANDARD

This court's prior order on attorneys' fees (ECF No. 375) addressed Normark's motion for fees and expenses under 35 U.S.C. § 285 ("Section 285") as well as for sanctions under Rule 11 of the Federal Rules of Civil Procedure and expert expenses under the court's inherent authority. Consistent with the scope and basis of the remand, this order modifies and supplements the prior order only as to Normark's motion for fees and (non-expert) expenses under Section 285.

The text of Section 285 reads as follows: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Thus, the plain language of Section 285 imposes two requirements before the court *may* award fees, that the case be "exceptional" and that the party seeking fees be the "prevailing party."

Prior to the decisions in *Octane Fitness* and *Highmark*, the Federal Circuit interpreted the "exceptional case" requirement as setting a high threshold for an award of fees. *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l., Inc.*, 393 F.3d 1376, 1381 (Fed. Cir. 2005) ((holding case may be deemed exceptional under Section 285 "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." ); *see also MarcTec, LLC v.*

---

[1] This court previously awarded attorneys' fees in the amount of $77,562.75 against Plaintiff, Pure Fishing, Inc. ("Pure Fishing"), arising from Normark's defense of Pure Fishing's claim relating to the Kelley Patent ("Kelley Claim"), of which $17,900 was for Normark's pursuit of its motion for attorneys' fees. The amounts awarded by this order are in addition to the fees previously awarded and costs paid by agreement.

*Johnson & Johnson*, 664 F.3d 907, 915-16 (Fed. Cir. 2012)(applying *Brooks*); *Highmark*, 687 F.3d 1300, 1308 (Fed. Cir.) (referring to the last grouping, "vexatious or unjustified litigation, conduct that violates [Rule 11], or like infractions[,]" collectively as the assertion of frivolous claims), *vacated and remanded* 134 S. Ct. 1744 (2014). In its prior motion, Normark argued that fees should be awarded under Section 285 on the last basis, frivolousness. Under then-controlling law, this required Normark to establish by clear and convincing evidence that the case was: (1) objectively baseless *and* (2) brought in subjective bad faith. *Highmark*, 687 F.3d at 1308-11; *MarcTec,* 664 F.3d at 916. *See* ECF No. 375 at 2-8 (addressing prior standard).

The United States Supreme Court's decisions in *Octane Fitness* and *Highmark* modified the Federal Circuit's standard for an attorneys' fees award. As the Court explained in *Octane Fitness*:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion considering the totality of the circumstance. . . . [T]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified.

*Octane Fitness*, 134 S. Ct. 1756 (internal quotation marks omitted); *id.* n. 6 (noting nonexclusive list of factors considered "under a similar provision in the Copyright Act" included "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.").

Specifically as to frivolousness, the Court rejected the Federal Circuit's former requirement that a case be *both* "objectively baseless *and* that the plaintiff brought it in subjective bad faith." *Id.* at 1757 (emphasis in original). Instead, the court held that "a case presenting *either* subjective bad

faith *or* exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* (emphasis added).

Finally, the Court modified the burden of proof to one of preponderance. *Id.* at 1758. The court explained that "Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one." *Id.* (also noting "patent-infringement litigation has always been governed by a preponderance of the evidence standard"). The Court again emphasized the discretionary nature of the decision in *Highmark*, which relied on the reasoning in *Octane Fitness* to hold "that an appellate court should review all aspects of a district court's § 285 determination for abuse of discretion." *Id.*

## DISCUSSION

### I.  Prior Alternative Rulings

As Pure Fishing notes in its memorandum in opposition to Normark's renewed motion for fees, this court made various alternative rulings in its prior order. For example, the court addressed critical determinations under both the then-controlling clear and convincing evidence standard of proof and a potential preponderance of the evidence standard. While these alternative rulings may have anticipated the change in the burden of proof, they did not anticipate the significant change in what the party seeking fees must prove. Thus, the alternative rulings in this court's prior order do not foreclose the modified rulings Normark now seeks.

### II.  Prevailing Party

Neither party suggests that the standards the court relied on in determining that Normark is a prevailing party entitled to seek fees under Section 285 were modified by *Octane* or *Highmark*.

The court, therefore, incorporates its prior ruling on this point. ECF No. 375 at 11-16. As summarized in the prior order:

> **Conclusion as to Prevailing Party Status**. In sum, Normark was ultimately successful in defending all claims asserted against it based on the combined result of favorable claim construction, subsequent voluntary dismissal of one claim in light of the court's claim construction (Kelley Claim), and summary judgment rulings (Cook Claims). It was, therefore, wholly successful in defeating the primary objective of the litigation. *See Brooks*, 393 F.3d at 1381 (focusing on primary objective of the litigation). Normark was unsuccessful only in failing to prevail on its inequitable conduct counterclaim due to its failure to prove intent to deceive the PTO by clear and convincing evidence. Therefore, considering the totality of the litigation, the court finds that Normark is the prevailing party.

## III.  Kelley Claim

As to the Kelley Claim, this court previously held, under a clear and convincing standard of proof and in light of the full record, that Pure Fishing's position was objectively baseless.[2] ECF No. 375 at 33-35. The court noted, in particular, Pure Fishing's shifting positions as to claim construction and the ultimate dependence of the claim on Pure Fishing's "one-molecule theory of claim construction." *Id*. As the prior order on attorneys' fees explained:

> In sum, Pure Fishing has failed, at any point in the litigation, to proffer support for its one-molecule theory. The express language of the stipulation of dismissal of the Kelley Claim confirms that the court's claim construction, specifically the rejection of the one-molecule theory, was fatal to the Kelley Claim. It follows that there is clear and convincing evidence that Pure Fishing's pursuit of the Kelley Claim was objectively baseless in light of the full record.

*Id.* at 35.

---

[2] The court incorporates its prior summary of proceedings relevant to the Kelley Claim. ECF No. 375 at 16-33. The court also incorporates its prior discussion of the objective prong of the former *Brooks* test. *Id.* at 33-35. For reasons explained below, the court modifies its prior discussion as to the subjective prong. *Id.* at 35-38.

The court, nonetheless, limited its award of fees to a period between November 3, 2011 and January 17, 2012, because it found clear and convincing evidence of Normark's *subjective* bad faith only during this period. The court based this determination, in part, on potential confusion as to the position Normark was taking. As the prior order explained:

> Prior to the time the parties filed their claim construction memoranda, it was unclear whether Normark was relying on an all-polymers theory of claim construction . . . . Only after the responsive briefs . . . were filed and the court sought clarification was it clear that Normark had disavowed the all-polymers theory . . . . To this point, Pure Fishing's opposition to what it understood Normark's construction to be was not unreasonable.

ECF No. 375 at 36.

Pure Fishing relies primarily on this language and its ultimate voluntary dismissal of the Kelley Claim in arguing that the court should not award any additional fees when considering Normark's renewed motion for fees under the *Octane Fitness* standard. ECF No. 395 at 21 (quoting ECF No. 375 at 36). Pure Fishing also notes that the court applied two alternative tests and standards of proof, finding that, prior to November 3, 2011, "Pure Fishing was not reckless in pursuing the Kelley Claim and advancing its related claim construction (*Kilopass* standard)" and that the evidence for the same period did not establish that Pure Fishing "knew or should have known that there was no objective foundation for the Kelley Claim (*Highmark* standard)." ECF No. 395 at 21-22 (quoting ECF No. 376 at 36).

For reasons explained below, were the court to now reconsider this ruling under the *Brooks* standard, it would be inclined to find that Pure Fishing was reckless in its pursuit of the Kelley Claim and that Pure Fishing should have known from very early in the litigation, if not before it was even filed, that the Kelley Claim lacked an objective foundation. However, as such a ruling is beyond the

6

scope of remand, the court rests only on a determination under *Octane Fitness* that Pure Fishing's pursuit of the Kelley Claim "stands out with respect to its substantive strength" and "unreasonable manner of litigation" and these conclusions apply throughout the litigation of the Kelley Claim.

As noted above and in prior orders, Normark's initial brief on claim construction might be read to advance an all-polymers theory of claim construction. It was primarily because of this potential interpretation of Normark's position that the court previously declined to find Pure Fishing acted with subjective bad faith in opposing Normark's claim construction position before November 3, 2011. The court may, in this respect, have focused too narrowly on the reasonableness of Pure Fishing's opposition to Normark's proposed claim construction as opposed to the ultimate viability of *Pure Fishing's proposed claim construction and viability of the underlying claim*. As noted in the prior order, once the court rejected Pure Fishing's proposed one-molecule theory (and alternative constructions offered on motion for reconsideration), Pure Fishing conceded it could not succeed on the Kelley Claim. This suggests not only that Pure Fishing's claim construction (for which no reasonable support was ever offered) was objectively baseless, but also that Pure Fishing should have understood from the outset that the Kelley Claim was dependent on this claim construction. This conclusion is further supported by Normark's unchallenged assertion that, before the complaint was served, it voluntarily disclosed the polymers it was using, none of which would support a claim of infringement even when (properly) considered independently.

Having reviewed the proceedings relevant to the Kelley Claim, this court reaffirms its conclusion that Pure Fishing's pursuit of the Kelley Claim was objectively baseless in light of the full record because Pure Fishing never articulated any reasonable basis for the claim construction on which the Kelley Claim was necessarily dependent. This finding further establishes that the case

7

stands out (as exceptionally weak) with respect to its substantive strength, thus supporting an award of fees under *Octane Fitness.*

Though subjective bad faith is no longer required to support an award of fees, the court has also considered whether and at what point Pure Fishing should have recognized that the Kelley Claim was, if not fatally flawed, at least exceptionally weak. As to this issue, the court finds that Pure Fishing should have recognized the extreme weakness of the Kelley Claim prior to the date Normark filed its answer. Together, these considerations strongly favor an award of fees.

While the court does not repeat them here, it also incorporates its summary of Pure Fishing's shifting positions relevant to the Kelley Claim. *Id.* at 33-34. The court finds that these shifting positions resulted in an unwarranted increase in the expense of litigation imposed on Normark and burden imposed on the court and support a finding that Pure Fishing litigated the Kelley Claim in an unreasonable manner. The exceptional weakness of the Kelley Claim combined with the unreasonable manner of its pursuit also suggest the need for compensation and deterrence.

Taking all of these factors into consideration, the court finds that a further award of fees for Normark's defense of the Kelley Claim is warranted.[3] The court, nonetheless, retains discretion as to the amount of the award.

As demonstrated by the Sixth Declaration of J. Thomas Vitt, Normark's fees and expenses incurred in defense of the Kelley Claim totaled $305,531.63 as of September 2013. In addition, Normark incurred fees of $79,529.21 in its first two motions for attorneys' fees relating to the Kelley

---

[3] The prior order limited the fee award because the court found subjective bad faith only for a limited period. As explained in *Octane*, however, fees may be awarded *either* for objective baselessness *or* subjective bad faith. Here, the court finds that the objective baselessness of the Kelley Claim, together with other considerations addressed above, is sufficient to support an award of fees without limitation to a specific period.

Claim. Accounting for the prior fee award of $77,562.75, which has been paid, and expert witness fees, which Normark concedes are not available under Section 285, Normark now seeks an additional award of $283,127.09 for fees incurred before this court's prior order on fees and an additional $4,022, which represents one half of the legal fees and expenses incurred to prepare the present motion for fees. Thus, Normark seeks a total additional award of $287,149.09.

Pure Fishing does not present any specific argument as to why the court should award less than this amount if it does award additional fees. Its only relevant argument consists of its concluding sentence: "Alternatively, if the Court does determine that the case, or any additional portion thereof, is exceptional, the Court should exercise its discretion and deny Normark *any* additional attorneys' fees." ECF No. 395 at 25.

Having considered the degree to which the Kelley Claim was exceptional, specifically the objective baselessness (and thus exceptional weakness) of the claim, the degree to which it was pursued in an unreasonable manner, and the need for compensation and deterrence, the court finds an additional award of fees and expenses in the amount of $283,127.09 is appropriate.[4]

## IV. Cook Claims

With respect to the Cook Claims, the court previously found neither objective baselessness nor subjective bad faith and, consequently, denied Normark's motion for attorneys' fees.[5] The court

---

[4] As Normark notes, the issue of expert witness fees is not before the court on remand. The court notes, nonetheless, that it would not modify its prior decision and award expert witness fees under the court's inherent authority were that issue properly before it.

[5] The court incorporates its prior summary of proceedings relevant to the Cook Claims. ECF No. 375 at 39-43. The court also incorporates its discussion of the objective and subjective prongs under the *Brooks* standard, which, though not determinative, address considerations relevant under *Octane Fitness*. *Id.* at 43-46.

has reviewed the record as to the Cook Claims in light of *Octane Fitness* and, again, concludes that fees are not warranted.

As explained in the court's prior order, Normark was ultimately successful in defending against the Cook Claims because of its success on its invalidity defense, which required proof by clear and convincing evidence. But for Normark's success on the invalidity defense, it would not have prevailed on the Cook Claims in light of its admission of literal infringement. Normark also failed to establish its counterclaim for inequitable conduct. Thus, although Normark was the prevailing party, it was not entirely successful, and much of its success was the result of success on an affirmative defense which required proof by clear and convincing evidence.

In its prior order, the court relied, in part, on the high standard of proof applicable to Normark's invalidity defense in analyzing the objective and subjective prongs under *Brooks*. *See* ECF No. 43-44 (addressing arguments relating to inventorship and on-sale bar defense). The court finds the same consideration significant under *Octane Fitness*. Given the high standard of proof applicable to Normark's invalidity defense and the particular arguments advanced by Pure Fishing (which, while ultimately unsuccessful, were not frivolous), the court does not find Pure Fishing's position to be so weak as to warrant an award of fees. Neither does the court find that Pure Fishing acted in an unreasonable manner in the way it litigated the Cook Claims, any improper motivation, or a need for compensation or deterrence. The court, therefore, declines to award fees as to the Cook Claims.

**V.     Other Fees**

Normark's motion includes a request that this court award its fees incurred on appeal of the summary judgment order relating to the Cook Claims. The sum total of Normark's discussion of

this point appears in its last footnote and reads as follows: "Normark previously indicated that it would seek attorneys' fees incurred on appeal of the Cook Claims from the Federal Circuit. On reflection, however, Normark seeks these fees in the first instance from this Court, because this Court is much more familiar with the facts and history of this matter." ECF No. 391-1 at 23 n.8.

Given the brevity of this "argument" the court might conclude that this was merely an indication of intent to file some future motion in this court relating to fees incurred on appeal. However, because the amount sought for defense of the Cook Claims includes the fees on appeal, the court assumes Normark intends for the court to rule on this record. *See* ECF No. 391-1 at 24 (seeking $1,918,508.70 for defense of the Cook Claims). This is further supported by the Fourth Vitt Declaration which includes fees on appeal in this total and states: "Normark also seeks recovery of the fees and expenses incurred in connection with Pure Fishing's appeal of the Court's summary judgment decision. I attach as Exhibit A the invoices reflecting those fees and expenses, which total $97,158.01[.]" ECF No. 391-2 ¶ 6; *see also id.* ¶ 8 (including fees on appeal in total sought).

The court declines the invitation to address this aspect of Normark's motion for fees. While this court may be more familiar than the Court of Appeals with the history of this action in this court, it has no knowledge whatsoever of the arguments made on appeal, much less whether they were so weak that they should be considered "exceptional." Further, Normark has failed to provide this court with any basis on which to make this decision. In any event, the very logic of *Octane Fitness* suggests that such a motion should be directed to the court that considered the appeal.[6]

---

[6] Even if the motion for fees on appeal were properly before this court, it would find that Normark has, to this point, failed to present an adequate record to support the request for fees on appeal and, therefore, deny the motion to the extent it seeks appeal-related fees and expenses.

11

## CONCLUSION

For the reasons set forth above, the court grants Normark's renewed motion for fees in part, and awards an additional $283,127.09 in attorneys' fees and expenses for its defense of the Kelley Claim. The court denies the motion to the extent it seeks fees for defense of the Cook Claims and declines to consider the motion to the extent it seeks fees on appeal.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
October 28, 2014